IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| TODD and LISA MAYER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:11-cv-147 |
| | ) | |
| EMC MORTGAGE CORPORATION, | ) | |
| JP MORGAN CHASE BANK, N.A., and | ) | |
| DOES 1-100 | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This matter is before the court on the Defendants' Partial Motion to Dismiss for Failure to State a Claim [DE 39] filed on December 23, 2013, and the Plaintiffs' Motion for Leave to File Surreply [DE 47] filed on February 7, 2014. For the following reasons, the motion Defendants' Partial Motion to Dismiss for Failure to State a Claim [DE 39] is **GRANTED IN PART** and **DENIED IN PART,** and the Plaintiffs' Motion to for Leave to File Surreply [DE 47] is **DENIED.**

*Background*

On October 7, 2005, the plaintiffs, Todd and Lisa Mayer, executed and delivered to GreenPoint Mortgage Funding, Inc. an Adjustable Rate Note in the original principal sum of $294,000. To secure the note, the plaintiffs executed a mortgage in favor of GreenPoint that encumbered the property commonly known as 2901 Prentiss Drive, Valparaiso, Indiana, 46385. EMC was the originator or seller of the mortgage and "EMC/Chase was/is the servicer of the Mortgage." (Pl.'s Am. Compl. ¶¶ 15, 20)

1

The plaintiffs filed their amended complaint on November 7, 2013. In Count I, the plaintiffs allege that the defendants violated the Real Estate Settlement Procedures Act (RESPA). In Count II, they complain that the defendants breached four contracts that they entered with EMC that modified their monthly payment obligations. They entered the first agreement on March 1, 2008, and attached a copy of the agreement to their complaint. The attached document did not bear the signature of an EMC representative. The parties dispute whether the agreement permanently modified the payment structure or whether it set forth how the delinquency would be paid back over the course of six installment payments.

The plaintiffs allege that they entered a second, third, and fourth agreement to modify the loan. The plaintiffs attached a letter dated December 23, 2009, which stated that they did not qualify for a loan modification. To show that the third agreement was entered the plaintiffs attached a third letter that was not signed by either party. The plaintiffs did not attach any written document to show that a fourth agreement was entered, and did not allege in their complaint that the fourth agreement was reduced to writing. The plaintiffs stated that all of these agreements permanently modified the payment terms under the note.

The plaintiffs further allege that they delivered a Qualified Written Request (QWR) to Chase on August 31, 2010, attached as Exhibit K to their complaint. The plaintiffs stated that Exhibit K qualifies as a QWR under RESPA because it included the borrower's name, the numerical identification of the specific account, the geographic location of the borrower's local servicing branch, and other account information. The plaintiffs further allege that the document asserted a plain statement of the reasons for their belief that the account was in error, provided sufficient detail regarding information sought and specific corrections requested, and generally

described in great detail the issues surrounding the borrowers' account. The letter stated in relevant part:

> My clients . . . have requested a specific payment history to show where the payments for the last two years have been applied. That has never been provided. What has been provided is a Customer Account Activity Statement which does not show where or how the payments have been applied for the last year.
>
> My clients have made numerous attempts in the past two years to apply for modifications of their mortgage. . . .They attempted to contact your company to make payments after the trial period and was [sic] instructed to continue to pay the amount that was entered into without any written reasons for denial of the modification. . . .This was never conveyed in writing to my clients nor was a letter of rejection ever sent regarding the application for modification being rejected or denied due to the reason given above. . .
>
> My clients were sent an escrow statement dated June 3, 2010 showing they had a surplus of $1139.47 in their escrow account when it should have been $489.00. Clearly the overpayment of their monthly payments have [sic] been applied to escrow instead of the arrearage amount. They requested that this surplus amount be applied to the arrearage.
>
> I am requesting on behalf of my clients that the amount that is in arrears be put on the back end of their loan. This would save my clients from the continued hit each month that their credit rating is being negatively scored. . . . If this is not done then I will be forced to file suit against EMC Mortgage under the terms of the Fair Credit Reporting Act.

The defendants now move for a partial dismissal of the plaintiffs' complaint, arguing that the loan modifications were not supported by the proper documentation and that the plaintiffs did not send a QWR that complies with the requirements of RESPA.

*Discussion*

The plaintiffs requested leave to file a surreply in opposition to the defendants' motion to dismiss. Northern District of Indiana Local Rule 7-1(e) states that a supporting brief may not exceed 25 pages without leave of court. The plaintiffs' proposed sur-reply brief exceeds this

3

page limit and the plaintiffs did not request leave of court. The plaintiffs' motion may be denied on this basis alone.

Furthermore, the court generally does not permit litigants to file a surreply brief. ***Hall v. Forest River, Inc***., 2008 WL 1774216, *1 n.1(N.D. Ind. April 15, 2009); ***Runkle v. United States.***, 1995 WL 452975, *1 (N.D. Ind. May 9, 1995). However, "[a] surreply brief is occasionally allowed when it raises or responds to some new issue or development in the law." ***Merril Lynch Life Ins. Co. v. Lincoln Nat. Life Ins. Co.***, 2009 WL 3762974, at *1 (N.D. Ind. Nov. 9, 2009). The court's decision to permit or deny a sur-reply brief is reviewed under an abuse of discretion standard. ***Cleveland v. Porca Co.***, 38 F.3d 289, 297 (7th Cir. 1994).

The plaintiffs argue that the defendants cited to new cases that they did not rely upon in their opening memorandum. However, the plaintiffs have failed to show that the defendants either raised a new issue or that the law developed from the time they filed their response brief. Rather, the defendants responded to the plaintiffs arguments and cited additional cases, none of which were decided after the plaintiffs filed their response, to further support their position. This does not warrant a sur-reply. It is commonplace for attorneys to cite different cases in their reply briefs and the cases were available for the plaintiffs to research on their own. For this reason, the court **DENIES** the plaintiffs' Motion to for Leave to File Surreply [DE 47].

Turning to the defendants Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6) allows for a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." Allegations other than those of fraud and mistake are governed by the pleading standard outlined in Rule 8(a), which requires a "short and plain statement" to show that a pleader is entitled to relief. **Federal Rule of Civil Procedure 8(a)(2)**. The Supreme Court

4

clarified its interpretation of the Rule 8(a)(2) pleading standard in a decision issued in May, 2009. While Rule 8(a)(2) does not require the pleading of detailed allegations, it nevertheless demands something more "than an un-adorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 566 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). In order to survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)); *Joren v. Napolitano*, 633 F.3d. 1144, 1146 (7th Cir. 2011). This pleading standard applies to all civil matters. *Iqbal*, 556 U.S. at 684, 129 S. Ct. at 1953.

The decision in *Iqbal* discussed two principles that underscored the Rule 8(a)(2) pleading standard announced by *Twombly*. *See Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965 (discussing Rule 8(a)(2)'s requirement that factual allegations in a complaint must "raise a right to relief above the speculative level"). First, a court must accept as true only *factual* allegations pled in a complaint; "[t]hreadbare recitals of the elements of a cause of action" that amount to "legal conclusions" are insufficient. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. Next, only complaints that state "plausible" claims for relief will survive a motion to dismiss: if the pleaded facts do not permit the inference of more than a "mere possibility of misconduct," then the complaint has not met the pleading standard outlined in Rule 8(a)(2). *Iqbal*, 556 U.S. at 678-679, 129 S.Ct. at 1949-50; *see also Brown v. JP Morgan Chase Bank*, 2009 WL 1761101, *1 (7th Cir. June 23, 2009)(defining "facially plausible" claim as a set of facts that allows for a reasonable inference of liability). The Supreme Court has suggested a two-step process for a court to follow when considering a motion to dismiss. First, any "well-pleaded factual allegations" should be assumed

to be true by the court. Next, these allegations can be reviewed to determine if they "plausibly" give rise to a claim that would entitle the complainant to relief. *Iqbal*, 556 U.S. at 678-679, 129 S. Ct. at 1949-50; ***Bonte v. U.S. Bank, N.A.***, 624 F.3d 461, 465 (7th Cir. 2010). Reasonable inferences from well-pled facts must be construed in favor of the plaintiff. ***Murphy v. Walker***, 51 F.3d 714, 717 (7th Cir. 1995); ***Maxie v. Wal-Mart Store***, 2009 WL 1766686, *2 (N.D. Ind. June 19, 2009)(same); ***Banks v. Montgomery***, 2009 WL 1657465, *1 (N.D. Ind. June 11, 2009)(same).

The plaintiffs first raised claims under the Real Estate Settlement Procedures Act. RESPA was enacted to insure that consumers are provided with greater information during the real estate settlement process. **12 U.S.C. § 2601(a).** To promote this purpose, servicers of federally related mortgages must provide a written response to a qualified written request from the borrower within five days of receipt. A qualified written request is

> written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Within 30 days of receiving a QWR, the servicer must either make the appropriate correction in the account or provide the borrower with a written explanation or clarification that explains the reasons the servicer believes the account is correct or provide the borrower with an explanation of why the requested information is unavailable or cannot be

6

obtained.

The parties agree that the letter the plaintiffs identified as their QWR included the borrowers' names and account numbers but dispute whether it identified the specific reasons for the QWR or made a specific request for information. The Seventh Circuit has defined the standard for determining whether a letter constitutes a QWR as follows:

> RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly. The language of the provision is broad and clear. To be a qualified written request, a written correspondence must reasonably identify the borrower and account and must include a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

*Catalan v. GMAC Mortgage Corp*., 629 F.3d 676, 687 (7th Cir. 2011).

Applying this standard, district courts within this circuit have liberally construed letters as QWRs that identify the errors made by the servicer without requesting a specific action related to servicing the loan. *See e.g.* ***Baginski v. JP Morgan Chase Bank, N.A.***, 2012 WL 5989295 (N.D. Ill. Nov. 29, 2012). In ***Todd v. Shorebank***, 2013 WL 3790966 (N.D. Ill. July 19, 2013), the court addressed the limitations of the ***Catalan*** decision, explaining that the letter must contain requests related to the errors in loan servicing, including such errors as incorrect due dates, un-cashed checks, and unapplied payments. A letter will not qualify as a QWR if it relates to the application or origination of the loan rather than the servicing. ***Todd***, 2013 WL 3790966 at *6. *See also* ***MorEquity Inc. v. Naeem***, 118 F.Supp.2d 885, 901 (N.D. Ill 2000)(dismissing RESPA counterclaim because the purported QWR sought information related to the validity of the loan but unrelated to the servicing).

7

Title 12 U.S.C. § 2605(i)(3) defines servicing as: (1) "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan"; and (2) "making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." Because requests for information related to the status of a defaulted mortgage loan and delinquent mortgage payments do not relate to the receipt of a scheduled periodic payment or information regarding the servicer making any payments with funds received from the borrow, such requests do not constitute "servicing". *Moore v. F.D.I.C.*, 2009 WL 4405538 at*4 (N.D. Ill. Nov. 30, 2009).

In *Baginski v. JP Morgan Chase Bank, N.A.*, 2012 WL 5989295 (N.D. Ill. Nov. 29, 2012), the plaintiff sent a letter to Chase complaining that it required him to make escrow payments, whereas his previous servicer had not required him to do so, that the escrow payments were excessive, that Chase failed to apply his monthly mortgage payments correctly and then contacted the credit bureau concerning the missed payments, and that Chase stopped accepting payments from him. *Baginski*, 2012 WL 5989295 at *5. The plaintiff requested reinstatement, a request outside the definition of "servicing", rather than specific information from his account, but the court explained that the letter qualified as a QWR because it sufficiently described the alleged errors to the account. *Baginsk*i, 2012 WL 5989295 at *5. *See also Arriaga v. Wells Fargo Bank, N.A.*, 2013 WL 1303831, *4 (N.D. Ill. March 27, 2013) (finding that letter inquiring about charges on account could be construed as a QWR); *Chatman v. Fairbanks Capital Corp*., 2002 WL 1338492, *7 (N.D. Ill. June 18, 2002) (finding a letter that questioned and disputed the application of their payments was a QWR).

The defendants argue that the plaintiffs' letter did not request any information regarding

8

the loan and did not make a request for corrections. Instead, it demanded that Chase agree to a loan modification. It is true that the only specific demand the letter made was for the arrears to be put on the back end of the loan and that this demand did not involve either the defendants' receipt of payments pursuant to the terms of the loan or the making of payments as required by the terms of the loan. A servicer's denial of a permanent loan modification and any actions related to any loan modification are outside the term "servicing", and thus cannot be pursued under RESPA. *Tavake v. Chase Bank*, 2012 WL6088305, *4 (E.D. Cal. 2012) ("RESPA only obligates loan servicers to respond to or refrain from acting upon a borrower's QWR relating to the servicing of his or her loan, which does not include a loan modification".) (citing *Williams v. Wells Fargo Bank, N.A., Inc*., 2010 WL 1463521, at *3 (N.D.Cal. Apr.13, 2010) (dismissing a RESPA claim where the plaintiffs' QWR asked for documents relating to their "options" for a loan modification, and noting that "[n]ot all requests that relate to the loan are related to the servicing of the loan" (emphasis in original)); *Saucedo v. Bank of America, N.A.*, 2011 WL 6014008, at *2 (D.Or. Dec.1, 2011) ("The denial of a loan modification is not 'servicing.' "). *See also* *In re Salvador*, 456 B.R. 610, 623 (M.D. Ga. 2011) (citing *Williams v. Wells Fargo Bank, N.A., Inc.,* 2010 WL 1463521 at *3 (N.D.Cal. April 13, 2010) (a request for documents relating to borrowers' options for loan modification, short sale, or bankruptcy was not a request for information relating to the servicing of the loan); *MorEquity, Inc. v. Naeem*, 118 F.Supp.2d 885, 901 (N.D.Ill. 2000) (a request for information relating to validity of loan documents was not a request for information relating to servicing of the loan)).

The court agrees that much of the context of the plaintiffs' letter involves facts that are outside the definition of "service" and would not qualify as a QWR if that was all the letter

9

contained. However, the letter also alleges that the defendants did not provide a payment history, did not correctly apply their overpayment, no longer would allow them to pay over the telephone, did not provide a monthly statement showing what payment was expected, and could not explain where the excess payments were applied. Requests for information such as the payment history and monthly statement showing what payment was expected would fall squarely within the ambits of the definition of servicing. *See* **Rak v. Saxon Mortgage Services, Inc**., 2014 WL 861485, *6 (E.D. Mich. 2014) (explaining that a request for payment history and complete history of all charges and amounts of claimed arrears on delinquencies fell under the definition of servicing) (citing **Sovereign Bank v. Sturgis**, 863 F.Supp.2d 75, 105 (D.Mass.2012) (finding that requests for itemized statement of charges and itemized statement of late fees "fit precisely within the ambit [of servicing] defined by the statute.")). Additionally, errors in the application of overpayment relates directly to the defendants' servicing of the loan.

Although the plaintiffs did not make a demand for the defendants either to provide the payment history at this time or correct the misapplication of their overpayment, the Seventh Circuit has liberally construed the QWR requirements to include descriptions of the alleged errors to the account. Here, the plaintiffs' letter does just that. In addition to reciting the loan history and requesting relief outside the scope of "servicing", the letter set forth additional errors that the defendants committed that fall squarely within the scope of servicing. For this reason, the court finds that the plaintiffs alleged sufficient facts to show that they submitted a proper QWR. The court **DENIES** the defendants' motion to dismiss on this claim.

The defendants next argue that the plaintiffs' claim for breach of contract should be dismissed as the claim relates to the four loan modifications because the agreements did not bear

the required signatures. Indiana Code § 26-2-9-4 states that a debtor may assert a claim for equitable relief

> only if the credit agreement at issue:
>
> (1) is in writing;
>
> (2) sets forth all material terms and conditions of the credit agreement, including the loan amount, rate of interest, duration, and security; and
>
> (3) is signed by the creditor and the debtor.

The defendants explain that two of the alleged modifications are not evidenced by any written instrument and that the other two modifications are supported only by letters delivered to the plaintiffs, one which does not bear either parties' signature and the other which is not signed by the defendants. Because the plaintiffs have failed to include or to describe a written instrument that bears the appropriate signatures, the defendants argue that the plaintiffs have not provided or described any written agreement that permanently modified the loan.

In response, the plaintiffs concede that loan modifications must be supported by writing under Indiana law and that it cannot support the fourth modification with a written instrument. However, the plaintiffs argue that they either attached a supportive writing or that discovery will produce written contracts for each of the other three agreements. The plaintiffs argue that at this stage it is sufficient that they have pleaded that such contracts have been validly formed in writing and that they did not plead that the contracts were oral. The plaintiffs alternatively argue that the agreements were separate and distinct from the loan documents, and therefore were not loan modifications and were not subject to Ind. Code § 26-2-9-4.

The plaintiffs' alternative argument is not persuasive. To begin, in their amended complaint the plaintiffs alleged that "because of EMC/Chase's failure to honor these agreements,

they did not convert the original mortgage instrument to different terms and provisions; including their failure to convert the instrument to different payment terms. In reality, EMC disregarded these agreements and held Plaintiffs' responsible for all of the terms and provisions of the original mortgage instrument as is evidenced by their default and foreclosure based upon the terms and provisions of the original mortgage instrument." (Pl.'s Compl. p. 13) The plaintiffs alleged that the four agreements were intended to modify the original note and cannot now argue that they were not. In fact, the plaintiffs labeled the agreements as the first, second, third, and fourth payment modification. The agreements had to be modifying some previous agreement, namely the original loan. Moreover, if the modifications were separate agreements as the plaintiffs now assert, the original loan would not have been modified, and the plaintiffs' late payments would have breached the original loan agreement regardless of the modifications. This certainly is contrary to the plaintiffs' theory of recovery.

Having determined that the agreements were loan modifications, the agreements must comply with Ind. Code § 26-2-9-4. The plaintiffs had conceded that the fourth agreement was not reduced to writing.

In their complaint, the plaintiffs alleged that the second modified monthly payment was reached when "EMC informed Plaintiffs that the HAMP program required that Plaintiffs enter a 'Trial Period' for four (4) consecutive months whereby Plaintiffs' were required to pay Two Thousand, Four Hundred-eighteen Dollars." (Pl.'s Compl. p. 8 ¶34) This allegation does not state whether they were informed orally or by a written document. However, what is clear from this statement is that there was no document signed by both parties agreeing to the terms. The complaint explicitly states that the plaintiffs "were informed" of the change of payment, not that

12

the parties entered into an agreement, albeit a written agreement signed by both parties. This is further supported by the fact that the plaintiffs cited to Exhibit F to support this allegation, which is a letter EMC sent to the plaintiffs informing them that their income exceeded the maximum for their loan modification program and to contact EMC for alternative solutions. Although the plaintiffs do not have to produce written support at this stage, their pleading clearly reflects that they "were informed" of the change, a unilateral act by EMC, and that no written document exists.

The plaintiffs face a similar challenge with respect to their third payment modification. The plaintiffs alleged that "EMC requested payments be made in the amount of Two Thousand, Eight Hundred Sixteen Dollars". (Pl.'s Compl. p. 11 ¶ 52) Again, the plaintiffs did not identify whether the request was made orally or in writing, and did not cite to any supporting documentation. Regardless, a request is "an act of politely or formally asking for something" Merriam-Webster Online Dictionary. htttp://www.merriam-webster.com (April 10, 2014). Such an act is unilateral and omits the possibility that the parties entered a signed, written agreement.

This leaves the first modification. In their complaint, the plaintiffs alleged that they "entered into an agreement" with EMC to reduce their monthly payment. In support, the plaintiffs cited to Exhibit E, which is a letter stating that the parties entered an agreement for the delinquent amount due. The letter was signed by the plaintiffs but does not bear the signature of an EMC representative. At this stage, it would be premature to require the plaintiffs to produce a copy of the contract signed by both parties. The plaintiffs have alleged that they entered a written agreement with EMC. The issues of whether the letter the plaintiffs attached to their complaint is the only written document and whether it complies with all the requirements of Ind.

Code § 26-2-9-4 are better left for the parties to resolve after the plaintiffs have had an opportunity to conduct discovery. It is clear that the plaintiffs were not simply informed of the payment modification with respect to the first modification, and it is plausible that the requisite documentation may exist.

Because the plaintiffs have not alleged anything more than they were "informed" or that the defendants "requested" a modification in their monthly payments with respect to the second and third agreements, their complaint shows that there was nothing more than a unilateral act by the defendants, rather than a written agreement, between the parties. The plaintiffs also have conceded that the fourth modification was not reduced to writing. For these reasons, the plaintiffs' complaint does not sufficiently plead facts that show that the second, third, and fourth loan modifications complied with Ind. Code § 26-2-9-4. Therefore, the court **GRANTS** the defendants' motion as it relates to the second, third, and fourth loan modifications and **DENIES** the motion with respect to the first loan modification.

Based on the foregoing reasons, the motion Defendants' Partial Motion to Dismiss for Failure to State a Claim [DE 39] is **GRANTED IN PART** and **DENIED IN PART** and the Plaintiffs' Motion to for Leave to File Surreply [DE 47] is **DENIED.**

**ENTERED** this 22nd day of April, 2014

/s/ Andrew P. Rodovich
United States Magistrate Judge